## No. 12,240.

### THE STATE VS. JOHN SCOTT.

| 49 | 253 |
|----|-----|
| 49 | 1094 |

| 49 | 253 |
|----|-----|
| o110 | 14 |

| 49 | 253 |
|----|-----|
| 113 | 984 |
| e113 | 988 |

| 49 | 253 |
|----|-----|
| f118 | 277 |

The law presuming sanity, the burden is on the accused urging his insanity as a defence, to prove it. Archbold Criminal Law, p. 549 *et seq.;* 2 Bishop Criminal Procedure, Sec. 672 *et seq.*

That proof must satisfy the jury the accused was not of sane mind at the time of the act charged; they should consider all the testimony before them, whether produced by the accused or the State, and give due weight to the presumption of sanity; if on the whole testimony, and giving to the presumption of sanity its full operation, they are satisfied the accused was insane when the act was committed they should acquit, but if not thus satisfied they should deem the accused sane and responsible. Archbold Crim. Law, p. 549 *et seq.;* 2 Greenleaf on Evidence, Sec. 173; 2 Bishop Criminal Procedure, Sec. 675 *et seq.;* Wharton's Criminal Law, Sec. 62 *et seq.;* Davis vs. United States, 160 U. S., p. 469.

APPEAL from the Criminal District Court for the Parish of Orleans. *Moise, J.*

---

*M. J. Cunningham*, Attorney General; *R. H. Marr*, District Attorney, and *John J. Finney*, Assistant District Attorney, for Plaintiff, Appellee.

*Chandler C. Luzenburg* and *Bernard Titche* for Defendant, Appel-ant.

Argued and submitted November 21, 1896.
Opinion handed down January 18, 1897.

The opinion of the court was delivered by

MILLER, J. The accused, indicted for murder, convicted and sentenced for manslaughter, takes this appeal.

The accused relies on a number of exceptions to the charge of the judge. But the question sought to be raised in nearly all is as to the correctness of the charge in respect to the defence of insanity, and the refusal of the instruction on that subject requested on behalf of the accused. On this defence of insanity the instruction in part was:

"Every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crime, until the contrary be satisfactorily proved. When insanity is set up as a defence for crime, it must be proved as a substantive fact by the party alleging it, on whom lies the burden of proof. The degree of proof must be by a preponderance of evidence. This does not mean a preponder-ance of witnesses, but it means that, taking all the evidence into consideration, the weight and effect of it is to satisfy your minds that at the time of the commission of the act the prisoner was insane. The presumption of sanity must be overthrown, and this presumption exists with as much force as the presumption of inno-cence.

"As the law presumes a man to be innocent until he is proven guilty, if there is a reasonable doubt as to his guilt, this degree of proof as to guilt does not overcome the presumption of innocence, and he should be acquitted. The presumption of sanity is a logical parallel to the above rule. Men are presumed to be sane until they are proven insane. If there is a reasonable doubt as to their sanity, this degree of proof as to insanity does not overthrow the the presumption of sanity, and the jury should find him sane. These two presumptions of law as to 'innocence' and 'sanity' stand upon the same footing. The burden is upon the State to overcome the presumption of innocence, while the burden is upon

the defendant to overcome the presumption of sanity when insanity is set up as a defence, and both presumptions should be overcome beyond reasonable doubt." To this part of the charge the defendant excepted as ambiguous, contradictory and not a correct exposition of law. It is urged on us that this portion of the charge placed before the jury for their guidance two different rules of proof; one that the preponderance of testimony sufficed, and the other that proof beyond a reasonable doubt was required to establish insanity as a defence. Our decision is controlled by a more important factor.

The objection in varied forms presented by the other bills is, in effect, that the charge is erroneous in its requirement of the degree of proof requisite to support the defence of insanity. The charge recognizes the distinction between the preponderance of proof and that which excludes all reasonable doubt, and instructs that the burden is on the accused to prove beyond all reasonable doubt he was not sane at the time of the commission of the act charged. The charge follows that sustained by our predecessors in State vs. De Rance, 34 An. 186, and in State vs. Burns, 25 An. 302, and State vs. Coleman, 27 An. 691.

Without the sanity of the accused there can be no guilt. Humanity and the law alike concur in this and utterly exclude punishment for crime when there is no moral responsibility of the accused. It is familiar that guilt must be proved beyond a reasonable doubt before punishment can be inflicted. Yet the charge in this case places on the accused the burden of disproving one of the constituents of guilt, and exacts of him the highest order of proof known to the law. In both aspects the proposition has been controverted by text writers and decisions. The preponderance of proof is recognized as that of a character to satisfy the mind, though it be not free from reasonable doubt. This preponderating proof is enough in civil cases to authorize a finding in favor of the party. The terms are of constant use in the administration of the criminal law. The charge in this case implies, if it does not express, that though there may be a preponderance of testimony before the jury to show that the accused was insane at the time of the act, yet they may convict. It is not easy to conceive that with this preponderating proof they can deem guilt established beyond a reasonable doubt, the prerequisite of any conviction. Can, then,

this charge be sustained which exacts punishment with preponderating proof producing not only a reasonable doubt of guilt, but preponderating to càrry the conclusion that no guilt can exist, because of the absence of that moral accountability, the basis of all punishment for crime. Between hanging the maniac or bringing to the scaffold one whose insanity is established by a preponderance of testimony before a jury that pronounces him guilty, is a difference in degree, not of principle. A conviction when insanity is thus proved this charge sanctions.

If we turn to the authority of text-books and decisions it must seem difficult to maintain the charge, conceding all due weight to the decisions of our predecessors, and types of that class in some of the decisions of the courts of other States. In State vs. Spencer, 1 Zabriskie (N. J.), 196, the court instructed, if in weighing testimony of insanity against that of sanity the scales are balanced or so nearly poised as to leave a reasonable doubt of insanity, the accused was to be deemed sane. This decision, that sustains punishment when guilt is ascertained by the balanced or nearly poised scale, is in marked contrast with the rule that exacts proof of guilt beyond all reasonable doubt. In one of the text-books there is the comment, the decision has been departed from in the New Jersey courts, 1 Bishop, Criminal Procedure, Sec. —. The case of Regina vs. Layton, 4 Cox Criminal Cases, is cited by the State as supporting the charge under consideration. But as we gather that decision from the report, the instruction was that sanity was to be presumed till the contrary was proved, and the question for the jury was whether the accused had proved to their satisfaction he was not of sound mind. There was no requirement of proof beyond that point—*i. e.*, the satisfaction of the jury. All the decisions tending to exact from the accused a higher degree of proof have had our attention. On the other hand the text-books and the weight of the decisions while affirming that the burden of proof of insanity is on the accused, maintain that the proof suffices that establishes insanity to the satisfaction of the jury. In 1 Waterman's Archbold there is an array of authority; with others the case of McNaughten is cited, much discussed in the House of Lords, and led to questions propounded to the judges as to the terms in which the question of insanity should be submitted to the jury. The answer was that the accused was to be presumed sane until the contrary was proved to the satisfaction of

the jury.    That charge is brief, plain and easily understood.    It is commended in all the text-books.    It exacts no greater degree of proof than that required to satisfy the mind and precludes any acquittal for insanity when the proof does not convince the jury on the point of inquiry.    Other authority arrayed by Mr. Archbold is to the effect that the testimony of insanity must be sufficient to over-rule the presumption of sanity and satisfy the jury the accused was not sane, or as put in another form, to sustain the defence the evidence must convince the jury that when the act was done the prisoner was not conscious he was committing crime.    1 Archbold, pp. 37, 38 *et seq.*    Other decisions have qualified the proof to be administered by the prisoner as a preponderance of the whole evidence that he was sane when he committed the act.    7 Gray, p. 583; 7 Metcalf, 500, 506.    The charge sanctioned in 1 Curtis, C. C., p. 1, was that the burden resting on the accused to prove insanity the whole evidence must satisfy the jury the prisoner was insane, otherwise he should not be acquitted.    In Wharton's Criminal Law the text is the defence of insanity must be proved by the accused as an independent fact, and he alludes to the Spencer case and to decisions on the other hand, maintaining the sufficiency of preponderating proof of insanity.    In the later edition of Wharton this preponderating proof is stated to be all that is required.    Wharton's Criminal Law, Sec. 711 and notes; 10th Edition, Sec. 62 and notes. It is Mr. Bishop's view, reviewing all the authorities, that it is never incumbent on the State to give affirmative evidence of the sanity of the accused, but if denied by proof administered by him the jury alone with the presumption of sanity must consider all the evidence, and if then they entertain a reasonable doubt of whether the accused did the act in a sane state of mind, they are to acquit, otherwise they are to convict.    1 Bishop Criminal Procedure, Sec. 534.

The same view substantially has been announced quite recently by the Supreme Court of the United States and is thus expressed in the head-note: no man is to be deprived of his life under the forms of law unless the jurors who are to try him are able on their consciences to say that the evidence before them, whether adduced on his behalf or by the State, is sufficient to show beyond a reasonable doubt every essential of the crime, and mental competency to distinguish between right and wrong was, of course, recognized as one

of the constituents of the crime.   United States vs. Davis, 160 U. S., p. 469.   In the light of principle and authority we can not assent to the proposition affirmed by this charge that with preponderating testimony of the insanity of the accused they may convict on the theory that a higher order of proof is required.   In this view the sentence must be reversed.

In view of the new trial we deem it proper to say with respect to other objections reserved by accused that the charge in a criminal case should be restricted to the questions fairly arising on the testimony.   In our view the explanation of insanity, whether it be termed temporary or epileptic in its character, was sufficient to meet the inquiry arising on the testimony, though an addition as to that form produced by the absence of will power would be appropriate. Wharton and Stille Medical Jurisprudence, p. 38.   We think it well to add, too, that on the issue of insanity testimony of the conduct of the accused before and after the act is proper to go to the jury under proper instructions.   2 Greenleaf on Evidence, Sec. 371.

While the misuse or abuse of this defence of sanity can not affect the legal principle on which the defence is allowed, we are deeply impressed with the importance of guarding against the failure of justice arising from the frequent interposition without foundation of this defence of insanity characterized in one of the decisions as the last resort of desperate criminals.   We have already suggested the charge should be restricted within the scope of the questions fairly arising on the testimony and not extend to forms, real or supposed, of mental disorder, not the subjects of inquiry under the testimony laid before the jury.   The charge should be clear and avoid unnecessary qualifications.   We think Professor Greenleaf's summary of the essentials of the instruction as to the burden and degree of proof required on the defence of insanity meets substantial requirements. 2 Greenleaf, Sec. 373.   We think it will suffice if the jury are told in effect that the burden of proof is on the accused to establish by clear and convincing proof the insanity he urges as a defence; that the presumption of sanity is to be taken into consideration and exercise its full influence along with all the testimony before them, whether produced by the accused or by the State; and if on the consideration of the whole testimony, giving due weight to the presumption of sanity, they are satisfied the accused was not of sane mind when the act charged was committed, they are to acquit, but if not thus satis-

fied they are to hold the accused sane and responsible.  With clear instruction as to the presumption of sanity; the burden of disproving it; and that in order to acquit on the ground of insanity the jury must be satisfied of that insanity by clear and convincing proof, it seems to us there should be no convictions of the insane, nor misapprehension by the jury of their duty to hold the accused sane and responsible when not satisfied of the insanity urged in his defence.

For the reasons given in this opinion, it is now ordered, adjudged and decreed that the sentence of the accused be annulled and set aside; that he be again put on trial on the indictment and be held in custody to abide the verdict on the new trial.

## CONCURRING OPINION.

WATKINS, J.  The defendant was indicted for murder, convicted of manslaughter, and sentenced to imprisonment in the penitentiary for fifteen years, and from that sentence appeals.

Under a plea of not guilty, the defendant sought to prove insanity as a defence, but the jury evidently regarded the proof insufficient.

The principal question argued at the bar and presented in the briefs of counsel on either side is, as to what was the proper instruction for the trial judge to have given to the jury with regard to the decree of proof necessary for them to acquit the defendant on the ground of insanity.

In the course of his written charge, the trial judge, amongst other things, gave to the jury the following instructions substantially, viz.:

That the presumption of sanity "exists with as much force as the presumption of innocence," and that the presumption of sanity can only be overcome by the same degree of proof that is necessary to overcome that of innocence.

That, as the law presumes a man to be innocent until he is proven guilty, if there be a reasonable doubt as to his guilt, the degree of proof as to his guilt does not overcome the presumption of innocence, and he should be acquitted.

The presumption of sanity is a logical parallel to the above rule. Every one is presumed to be sane until he is proven insane.  If there is a reasonable doubt as to the man's sanity, the degree of proof as to insanity does not overthrow the presumption of sanity, and the jury should find him sane.

State vs. Scott.

These two presumptions of law as to innocence and sanity stand upon the same footing.

The burden is upon the State to overcome the presumption of innocence, while the burden is upon the defendant to overcome the presumption of sanity, when insanity is set up as a defence. "Both presumptions should be overcome beyond a reasonable doubt."

To these instructions, defendant's counsel excepted on the ground that same were contradictory and conflicting, and reserved a bill of exceptions thereto.

An examination of a large number of decisions of the courts of different States, as well as those of the courts of England, shows that there are three distinct and well-defined theories on the subject, viz.:

*First*—That the proof administered must satisfy the minds of the jury beyond a reasonable doubt that the defendant was insane at the time of the commission of the act.

*Second*—That the burden of proof is upon the defendant to show, by a fair preponderance of evidence, that he was incapable of distinguishing right from wrong, and, consequently, insane.

*Third*—That if, upon the whole of the evidence adduced, that by the prosecution as well as that by the defendant, there is left in the minds of the jury a doubt as to the sanity of the accused, it is their duty to resolve that doubt in favor of the defendant, and acquit him.

We will make an examination and analysis of the authorities on each theory separately, and by that means ascertain in favor of which one they preponderate.

I.

On this theory the leading American authority is State vs. Spencer, 1 Zabriskie (26 N. J.), 196, and we make the following quotation therefrom, viz.:

"When the evidence of the insanity on the one side, and of sanity on the other, leaves the scale in equal balance, or so nearly poised that the jury have a reasonable doubt of his sanity, then a man is considered sane, and responsible for what he does."

Again:

"Proof of insanity at the time of committing the act ought to be so clear and satisfactory, in order to acquit him on the ground of

insanity, as the proof of committing the act ought to be, in order to find the sane man guilty."

Again:

" If, in your opinion, it is clearly proved that the prisoner at the bar, at the time of the homicide, was unconscious that what he did was wrong, and that he ought not to do it, you must acquit him on the ground of insanity; but if, in your opinion, this is not established beyond a reasonable doubt, then you must find him guilty of the act and proceed to investigate the nature of the homicide."

This case has been quoted and followed by several of the courts of other States, particularly in the following, viz. : State vs. Thompson, 1 Houston (Del.), 511; Hodge vs. State, 26 Florida, 11; State vs. Crawford, 11 Kansas, 32; Ballard vs. The State, 19 Nebraska, 609; Wright vs. People, 4 Nebraska, 407; Faulkner vs. Territory, 30 Pacific Rep. (N. M.) 905; State vs. McIntosh, 39 S. C. 97; State vs. Patterson, 45 Vermont, 308; Revoir vs. State, 82 Wisconsin, 295; Miller vs. State, 3 Wyoming, 667.

It will be observed that this theory has found favor in but comparatively few of the States.

## II.

On the second theory, those first in importance are the decisions of the English courts, and to illustrate we have made extracts from the following cases, viz. :

From Regina vs. Stokes, 3 Car. and K. 180, we make the following selection, viz. :

" If the prisoner seeks to excuse himself upon the plea of insanity, it is for him to make it clear that he was insane at the time of committing the offence charged. The *onus* rests on him, and the jury must be satisfied that he actually was insane. If the matter is left in doubt it will be their duty to convict him, for every man must be presumed to be responsible for his own acts until the contrary is clearly shown."

So in Regina vs. Layton, 4 Cox C. C. 149, the court said that the question for the jury was, not whether the person was of sound mind, but whether he had made out to their satisfaction that he was not of sound mind.

McNaghton's case, 10 Cl. and Fin. 200, wherein the defendant was discharged by a jury as not guilty of murder, " on the ground of

insanity," having created considerable discussion, was brought to the attention of the House of Lords, and the judges were summoned to give their opinions on the question of insane delusions giving immunity for acts punishable criminally, and Lord Chief Justice Tindall, speaking for the court, said, that the jury should be instructed that "every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defence on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing," etc.

That case has been frequently cited in the decisions, English and American, and is often quoted with favor by text writers, in treating of the subject of insanity.

Dr. Wharton, in his treatise on criminal evidence, cites the case of State vs. Spencer, 21 N. J. L. 196—the leading case in favor of the first theory we have outlined—and several leading English cases, and McNaghton's case among the number, as the representative of the second theory; and then he supplements the statement with the observation that the theory once entertained by the English courts has been so far modified that the rule announced in McNaghton's case, that the jury is to be governed by the preponderance of evidence, is the prevalent opinion in England. Whar. Crim. Ev., Secs. 337, 338.

But the modification of the theory is very readily observed by comparing the opinion of the judge in McNaghten's case with that of Lord Mansfield in Billingham's case, cited in Russell's Treatise of Crimes, as will be shown in the subjoined extract, viz.:

"In Billingham's case, who was tried for the murder of Mr. Percival, a part of the prisoner's defence was insanity; and upon this part of the case, Mansfield, C. J., stated to the jury, that in order to support such a defence it ought to be proved by the most distinct and unquestionable evidence that the prisoner was incapable of judging between right and wrong; that in fact it must be proved beyond all doubt that, at the time he committed the atrocious act with which he stood charged, he did not consider that murder was a crime against the laws of God and nature; and there was no other proof of insanity which would excuse murder, or any other crime," etc. 1 Russell on Crimes (7th Ed.), 16, 17.

Mr. Wharton adopts the modified theory as being more consonant with reason and justice, and says, " by the common law, every man is presumed to to be sane until the contrary is proved; and the better opinion is, that when insanity is set up by the defendant, it must be proved as a substantive fact by the party alleging it on whom lies the burden of proof." Wharton on Homicide (2d Ed.), Sec. 665.

Mr. Greenleaf states the rule in somewhat similar terms, thus:

" In all such cases the jury are to be told that every man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defence on the ground of insanity, it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing," etc.  2 Greenleaf on Ev., Sec. 373.

In the recent treatise of Rice on the law of criminal evidence, in discussing the plea of insanity, he says:

" After careful review of the various judicial *dicta*, we are inclined to recommend the instructions contained in the case of Baldwin vs. State, 12 Missouri, 223, which decision is authority for the broad proposition that the defence of insanity is established when the evidence offered in support of it preponderates in favor of the fact, and reasonably satisfies the jury that it existed at the time the criminal act charged was committed." 3 Rice on Ev., Sec. 396.

That author cites the case of Boswell vs. State, 63 Ala. 307, in which it was held that " insanity is a defence which must be established to the satisfaction of the jury by a preponderance of the evidence, and a reasonable doubt of the defendant's sanity, raised by all the evidence, does not authorize an acquittal." *Ibid.*, Sec. 399.

The author then observes that " the adjudged cases in this country present a vast weight of authority favorable to the doctrine of Boswell's case; or at least in repudiating the rule entitling a defendant to an acquittal upon the existence of a mere reasonable doubt of his sanity."

The expressions of some of the State courts, to whose opinions we invariably turn for information in case of serious doubt and perplexity, may here be quoted with advantage.

Following the later and modified jurisprudence of the courts of

England, the Massachusetts court in Commonwealth vs. Rogers, 7 Metcalf, 500, said:

" The ordinary presumption is, that a person is of sound mind until the contrary appears; and in order to shield one from criminal responsibility, the presumption must be rebutted by proof of the contrary, satisfactory to the jury, either out of the evidence offered by the prosecutor to establish the cause against the accused, or from the distinct evidence offered on his part; in either case it must be sufficient to establish the fact of insanity, otherwise the presumption must stand."

In Commonwealth vs. Eddy, 7 Gray, 583, the same court said:

" But it is a presumption of law, that all men are of sane mind; and that presumption of law sustains the burden of proof, unless it is rebutted and overcome by satisfactory evidence to the contrary. In order to overcome the presumption of law and shield the defendant from legal responsibility, the burden is on him to prove to the satisfaction of the jury, by a preponderance of the whole evidence in the case, that at the time of committing the homicide, he was not of sane mind."

In Ortwein vs. Commonwealth, 76 Penn. St. 414, the court said:

" Insanity must be made to appear on behalf of the defendant; and to be made to appear to the tribunal determining the fact, the evidence of it must be satisfactory and not merely doubtful, as nothing less than *satisfaction* can determine a reasonable mind to believe a fact contrary to the course of nature."

In State vs. Davis, 109 North Carolina, 780, the court sustained this instruction of the trial judge, viz.:

" The burden is on the defendant to satisfy the jury, but not beyond a reasonable doubt, that he had not sufficient mental capacity to know right from wrong," etc.

The foregoing *dicta* have been followed and repeated with perfect unanimity and without a single dissent, in the following cases from the States enumerated, viz.:   Persons vs. The State, 81 Ala. 577; Ford vs. The State, 71 Ala. 385; Gunter vs. The State, 83 Ala. 96; Coats vs. State, 50 Ark. 330; State vs. Cosat, 40 Ark. 511; Balling vs. State, 54 Ark. 588; People vs. Bemmerly, 98 California, 299; State vs. Trout, 74 Iowa, 545; State vs. Jones, 64 Iowa, 356; Kiel vs. Commonwealth, 5 Bush (Ky.), 362; Moore vs. Commonwealth, 18 S. W. Rep. (Ky.) 833;

Ball vs. Commonwealth, 81 Ky. 662; Kailin vs. Commonwealth, 84 Ky. 354; Commonwealth vs. Rogers, 7 Metcalfe (Mass.), 500; State vs. Lawrence, 57 Maine, 574; State vs. Hanley, 34 Minnesota, 430; State vs. Schoffer, 22 S. W. Rep. (Mo.) 447; Loeffner vs. The State, 10 Ohio St. 598; Bond vs. the State, 23 Ohio St. 349; Ortwein vs. Commonwealth, 76 Penn St. 414; Parnell vs. Commonwealth, 86 Penn. St. 260; Lynch vs. Commonwealth, 27 Penn. St. 207; State vs. Vance, 82 North Carolina, 631; State vs. Bundy, 24 South Carolina, 439; State vs. Paulk, 18 South Carolina, 515; Webb vs. State, 9 Texas App. 490; Leach vs. State, 22 Texas App. 279; People vs. Dillon, 8 Utah, 92; State vs. Strouder, 11 West Virginia, 745; Baccagalupo vs. Commonwealth, 33 Gratton (Va.), 807.

The foregoing decisions represent the settled opinions of seventeen States of the Union upon this most important and vital question, and they are in harmony with the present jurisprudence of England.

### III.

The leading and most important case which favors the third theory is Davis vs. United States, 160 U. S. 469, a case in which the question of insanity of the accused was examined with great care, and all authorities on the question were reviewed, English as well as American.

That case involved the correctness of the trial judge's charge to the jury, from which we make the following extract, viz.:

" In other words, if the evidence is *in equilibrio* as to the accused being sane, that is, capable of comprehending the nature and effect of his oath, he is to be treated just as he would be if there were no defence of insanity, or as if there were an entire absence of proof that he was insane.

But it was the contention on the part of the attorney for defendants in error that the true rule is that if the evidence raises a reasonable doubt of the sanity of the defendant, the jury should have been instructed to acquit him—that is to say, if the evidence offered by the defendant raises a doubt of his sanity, the burden is placed upon the prosecution to affirmatively overcome that doubt by proof of his sanity.

In support of this proposition the decisions of the following courts are cited, viz.: Connecticut, Florida, Illinois, Indiana, Kansas, Michigan, Mississippi, Nebraska, New Hampshire, New Mexico, New York, Wisconsin and Tennessee—thirteen in number.

The purport of these decisions is that while there is a presumption of defendant's sanity, this only goes to the extent of relieving the State of the burden of proving sanity, and without any proof on the subject the presumption is conclusive; but where proof is adduced establishing a reasonable doubt of his sanity it in effect establishes a reasonable doubt as to whether there was malice in the homicidal act, inasmuch as malice and ill will can not exist in the mind of an insane person.

Accepting this theory as most conformable to the ends of justice, the Supreme Court said:

"If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offence charged. His guilt can not be said to have been proved beyond a reasonable doubt—his will and his acts can not be held to have joined in perpetrating the murder charged—if the jury, upon all the evidence, have a reasonable doubt whether he was legally capable of committing the crime, or (which is the same thing) whether he wilfully, deliberately and unlawfully, and of malice aforethought, took the life of the deceased."

The court cites the following cases, from the States above mentioned, as supporting their theory, viz.: People vs. McCann, 16 N. Y. 488; Brotherton vs. People, 75 N. Y. 159; O'Connell vs. People, 87 N. Y. 377; Walker vs. People, 88 N. Y. 81; Chase vs. People, 31 Ill. 385; State vs. Bartlett, 43 N. H. 224; People vs. Garbill, 17 Mich. 9; Dove vs. State, 3 Hieskill (Tenn.), 491; Cunningham vs. State, 56 Miss. 269; Plake vs. State, 121 Ind. 433; People vs. State, 19 Ind. 170; Bradley vs. State, 31 Ind. 492; McDougal vs. State, 88 Ind. 24.

And finally they adopted the view expressed by the Supreme Court of the District of Columbia in Guiteau's case, 10 Federal Reporter, 161.

It is a fact that is worthy of observation that the Supreme Court cite no other decision of their own as a precedent therefor; and that they refer to no treatise on criminal law as supporting the theory upheld by them. On the contrary, they admit that the jurisprudence of the English courts maintains the correctness of the second proposition *supra;* and that the courts of a great number of the States of the Union do likewise.

Mr. Wharton says of the theory maintained by the Supreme Court in the Davis case:

"This is a modern and strictly American doctrine, and it finds no countenance, as far as I can discover, amongst the best law writers or adjudged cases in England. It seems to be supported by Mr. Bishop, alone, of the American text writers, and finds support in the decisions of only some nine or ten of the highest courts in the several States." Wharton on Homicide, Sec. 399.

In proof of this assertion, the author cites the greater portion of the decisions referred to by the court in the Davis case, and 2 Bishop's Criminal Law, Sec. 673; and he cites, *contra*, many of the decisions we have referred to on the other side.

## IV.

According to our judgment, this court has, in at least two cases, expressed its approval of the *second* theory; but in some opinions of recent date it has adopted the *first*. In so doing, it has pursued an exactly opposite course from that adopted by the English courts, which have changed from the *first* to the *second;* and that of the Supreme Court, which, as a matter of first impression, has chosen the *third* one.

For instance, in State vs. Burns, 25 An. 302, the trial judge was requested to charge the doctrine of the Davis case, to the effect "that if they entertained a reasonable doubt as to the sanity of the prisoner at the time of the commission of the alleged act, they were bound to acquit him;" but on the contrary, the judge charged the jury "that the law presumes the sanity of every man, and that it devolved upon the prisoner, under the plea of insanity, to satisfy the jury by a reasonable preponderance of proof, that he was insane at the time of the commission of the alleged act."

And this court said: "We think the judge did not err in his charge.

"The true rule is, that the jury are to be told, that every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that, to establish a defence on the ground of insanity, it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of mind, as not to know the nature and char-

acter of the act he was doing, or, if he did know it, that he did not know that it was wrong."

In State vs. Coleman, 27 An. 691, the charge given to the jury was very nearly the same as that given in the Burns case, as will appear from the following, viz. :

"When insanity is pleaded in defence of a criminal act, it must be clearly shown to have existed at the time of the commission of the act;" and "that every person is presumed to be sane until the contrary is proved, and it is for him who sets up this defence to prove it by evidence which will satisfy the minds of the jurors, that the party was insane at the time of the commission of the offence."

And the court said: "This charge was undoubtedly correct."

Upon comparison these two decisions will be found to square exactly with the present jurisprudence of the English courts; and, in criminal matters that jurisprudence is, by positive statutory enactment, made our guide.

The statute provides that "all crimes, offences and misdemeanors shall be taken, intended and construed according to and in conformity with the common law of England; and the forms of indictment, the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of crimes and misdemeanors, changing what ought to be changed, shall be according to the common law, unless otherwise provided." Sec. 33 of Act 50 of 1805, p. 440; Revised Statutes, Sec. 976.

And the force of this rule is strengthened by the provisions of Secs. 993, 994 and 995 of the Revised Statutes, which declare that the plea of insanity raised upon the general issue is one for the jury to determine as an issue of fact; and if same is sustained by proof their verdict shall be not guilty. It is clear, then, that a reasonable doubt of the insanity of the accused would not satisfy "our statute" and the principle of the Davis case can not be applied in this State.

The consequence is that in criminal matters this court must follow the decisions of the English courts as the best expression of the common law, in preference to those of the Supreme Court of the United States.

Adopting this as the correct guide it becomes our duty to conform our jurisprudence thereto.

In State vs. De Rance, 34 An. 186, our immediate predecessor, as already intimated, receded from the position assumed in the Burns and Coleman cases, and upheld the *first* theory *supra*.

That decision has been quoted as authority only once by this court as at present constituted; and then it was merely cited without discussion in an uncontested case.   State vs. Clements, 47 An. 1088.

Finding that decision—State vs. De Rance—unsupported by the current and weight of American authority, and not in keeping with the English jurisprudence, I think it the duty of this court to formally and in terms overrule it, and adhere to the theory maintained in State vs. Burns and State vs. Coleman.

My examination of the decisions cited in the De Rance case does not impress my mind as they seem to have impressed those of our predecessors.

In the first place, the Supreme Court of New Jersey, in a case of much more recent date than that of State vs. Spencer, has most distinctly aligned itself upon the *second* theory, as will appear from Graves vs. State, 45 New Jersey, 203—decided in 1883, whereas the Spencer case was decided in 1846—in which the court say:

" And indeed, so far as experience or tradition extends, it has been the invariable course to instruct the jury that the law, *primâ facie*, presumes mental sanity; and that when, in a given case, the prisoner would overcome such presumption, he must exhibit a clear preponderance of proof in favor of such defence."

That this change in the course of decision by that court is conspicuous, appears from the fact that it has been noted and commented upon by Mr. Wharton.   1 Wharton Crim. Law, Sec. 6 and note; Wharton Crim. Ev., Secs. 729, 336.

This change must have an important influence upon courts which have conformed their opinions to that theory, and indeed this has been done, especially by the South Carolina court.

Aligning the authorities cited in *De Rance's* case, I find, by making a comparison with the foregoing lists of cases which I have examined and cited, that all save one—State vs. Spencer, 1 Zabriskie (N. J.), 202—are to be classed as favoring either the *second* or *third* theory *supra*, and not the *first*, to which category the opinion assigned them.

Indeed, I find in the quotations selected by the court such expressions as " must be clearly proved," " on whom lies the burden of proof," "governed by the preponderance of testimony," " clear and satisfactory;" " will satisfy the jury," " to the satisfaction of the jury," " must be satisfactory," and the like, but there is not

found in any of them the statement that insanity must be proven *beyond a reasonable doubt* (pp. 188, 189).

And yet the opinion undertakes to say, upon the faith of those authorities, that " the burden of proof on this plea rests upon the defence urging it, and its truth must be established beyond a reasonable doubt " (p. 190, citing 27 An. 692).

On the application for rehearing an additional opinion was rendered refusing it, but there was no additional authority cited, the apparent effort being to reconcile the various expressions we have quoted with that of " beyond a reasonable doubt "—that is, to demonstrate that they are one and the same thing.   The conclusion is irresistible, then, that if they are not one and the same thing that opinion is wrong, and I have shown most conclusively by *all* authorities I have cited that they are totally different and irreconcilable altogether.

Not only is that the case, but in the year 1893, the year subsequent to that in which the decision of De Rance's case was rendered, the very decision of the court upon which it mainly depends was altogether changed.   45 N. J. 203.

It follows as a necessary consequence, that the instructions given by the trial judge to the jury were inconsistent and conflicting, and gave the accused just ground of complaint; but that was not the fault or mistake of our learned brother of the District Court, who merely conformed his views to those expressed by this court in the De Rance case.

### DISSENTING OPINION.

BREAUX, J.   Under the common law every man is presumed sane until the contrary be proven.

Insanity, as a plea, should be proved as a substantive fact by the accused on whom the burden of proof rests.

Being of the opinion that the proof of insanity at the time of committing the act ought to be made as clear and satisfactory by the accused, to secure his acquittal on the ground of insanity, as the proof of committing the act ought to be made evident by the State in order to find a sane man guilty, I respectfully dissent.

The foregoing rule is the English rule, announced by Mr. Wharton in his work on homicide.